**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MUNICH REINSURANCE AMERICA, INC., | Civil Action No. 09-2598 |
| Plaintiff, | |
| v. | **AMENDED OPINION** |
| TOWER INSURANCE COMPANY OF NEW YORK, | |
| Defendant. | |

**WOLFSON, United States District Judge:**

Having decided that Plaintiff Munich Reinsurance America, Inc. ("Munich") is entitled to pre-judgment interest on the amount of $3,287,597 for previously remitted insurance indemnification payments, the Court must now determine from what date pre-judgment interest accrues and what interest rate to apply. For the following reasons, the Court awards Plaintiff $175,853.04 in pre-judgment interest.

**I.    BACKGROUND**

As the parties are familiar with the factual background of this matter, this Court will only recount the facts necessary for disposition of the pre-judgment interest issue. This case arises out of multiple reinsurance agreements between Munich and Defendant Tower Insurance Company of New York ("Tower"), through which contracts the parties agreed

1

to indemnify each other against all or a portion of the loss sustained under certain standard insurance policies. Munich filed this suit on May 28, 2009 to recover past-due monies from Tower under the parties' agreements. Both parties filed motions for partial summary judgment and, on December 23, 2011, this Court granted in part and denied in part both motions.

Relevant here is Munich's motion for summary judgment on the net balance of $3,287,597 ("the past-due amount") plus applicable pre-judgment interest that it argued was due from Tower under certain reinsurance and retrocessional contracts. Tower did not oppose the net balance and informed the Court that, during the pendency of the suit, it had remitted the net balance to Munich. Tower, further, did not oppose the imposition of pre-judgment interest.

According to Tower, the reason why it did not initially pay the past-due amount is because it required additional information from Munich so that it could determine whether such amounts were actually due. Dulligan Cert., ¶ 2. Also according to Tower, it and Munich engaged in a mutual account reconciliation process and, on March 18, 2011, Munich provided the supporting documents that Tower requested. Id. at ¶ 3. Then satisfied that it owed the full amount sought by Munich, Tower made the payment in full on July 15, 2011.

Following my summary judgment decision, I directed Munich to submit an affidavit setting forth the appropriate pre-judgment interest and granted Tower the opportunity to respond. The parties have filed their submissions, with Munich seeking $673,806.00 in pre-

2

judgment interest and Tower arguing that only $5,404.27 is warranted.[1] Having considered the parties' submissions, I now rule on what is the appropriate amount of interest.

## II. DISCUSSION

For breach of contract actions, "the law of the forum state—in this case, New Jersey—applies to questions of process, of which the award of interest is one." Gleason v. Norwest Mortg., Inc., 253 Fed.Appx. 198, 203-04 (3d Cir. 2007). "Under New Jersey law, a trial judge in a contract action has discretion to award prejudgment interest in accordance with equitable principles." Id. at 204 (citing County of Essex v. First Union National Bank, 186 N.J. 46, 891 A.2d 600, 608 (2006)). As explained by the New Jersey Supreme Court in Litton Industries, Inc. v. IMO Industries, Inc., 200 N.J. 372 (2009),

> the award of prejudgment interest in a contract case is within the sound discretion of the trial court. Similarly, the rate at which prejudgment interest is calculated is within the discretion of the court. We have explained that the primary consideration in awarding prejudgment interest is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled.

Id. at 390 (quoting Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 506, 323 A.2d 495 (1974)) (internal citations omitted).

Importantly, "New Jersey state law distinguishes between postjudgment interest, which is governed by New Jersey Court Rule 4:42–11(a); prejudgment interest in tort cases,

---

[1] Additionally, Munich submitted a request to file a reply brief with the Court. The Court concludes that a reply is not necessary and, therefore, denies Munich's request.

which is governed by Court Rule 4:42–11(b); and prejudgment interest in contract cases, which is governed by equitable principles." Gleason, 253 Fed.Appx. at 204 (citing County of Essex, 891 A.2d at 609, inter alia).   That said, "reference to the postjudgment interest rules [found in subsection (a)] may serve as an appropriate benchmark in contract cases...." However, "the determination must ultimately be based on the equities of the case." Id. (citing DialAmerica Marketing, Inc. v. KeySpan Energy Corp., 374 N.J.Super. 502, 509-10 (App. Div. 2005)).  Indeed, the New Jersey Supreme Court has affirmed a trial court's use of "R. 4:42–11 as a guide" in a contract case.   Litton, supra at 390-91.

Rule 4:42-11 provides, in pertinent part

**(a) Post Judgment Interest**

\*                              \*                              \*

(ii) For judgments not exceeding the monetary limit of the Special Civil Part at the time of entry, regardless of the court in which the action was filed: commencing January 2, 1986 and for each calendar year thereafter, the annual rate of interest shall equal the average rate of return, to the nearest whole or one-half percent, for the corresponding preceding fiscal year terminating on June 30, of the State of New Jersey Cash Management Fund (State accounts) as reported by the Division of Investment in the Department of the Treasury.

(iii) For judgments exceeding the monetary limit of the Special Civil Part at the time of entry: in the manner provided for in subparagraph (a)(ii) of this Rule until September 1, 1996; thereafter, at the rate provided in subparagraph (a)(ii) plus 2% per annum.

**(b) Tort Actions**

[T]he court shall, in tort actions, . . . include in the judgment simple interest, calculated as hereafter provided, from the date

> of the institution of the action or from a date 6 months after the date the cause of action arises, whichever is later, provided that in exceptional cases the court may suspend the running of such prejudgment interest. . . . Prejudgment interest shall be calculated in the same amount and manner provided for by paragraph (a) of this rule except that for all periods prior to January 1, 1988 interest shall be calculated at 12% per annum ....

R. 4:42-11.

In short, subsection (a) addresses post-judgment interest. Within that subsection, part (ii) applies to "judgments not exceeding the monetary limit of the Special Civil Part," which is $15,000. See R. 6:1-1(c). For 2008, the post-judgment annual interest rate was 5.5%. For 2009, the rate was 4.0%. See Post-Judgment and Pre-Judgment Interest Rates (Updated January 2012) attached as Exh. A to Pl. Open. Br. Beginning in 2010, the rate dropped. For 2010, the rate was 1.5%. For 2011, it was 0.5% and, for this year, it is still 0.5%. This interest rate is equal to the average rate of return on the State of New Jersey's Cash Management Fund hence the parties refer to this rate as the "Cash Management Fund rate."

Part (iii) of subsection (a) addresses post-judgment interest on judgments exceeding the $15,000 Special Civil Part monetary limit. Part (iii) adds 2% to the default rate for part (ii) judgments. So, for example, the rate applicable to interest accruing in 2008 under subsection (a)(iii) would be 7.5% (5.5% + 2%).

Subsection (b) of the rule applies to pre-judgment interest in tort actions only, and applies the same rate as that found in subsection (a) with or without the additional two percent available under subsection (a)(iii). As noted, while the rule does not explicitly

5

address pre-judgment interest for non-tort actions, the Supreme Court in <u>Litton</u> has held that R. 4:42-11 may serve as a guide in making contract pre-judgment interest determinations.

The New Jersey Appellate Division in the contract case, <u>DialAmerica</u>, held that the post-judgment interest rules in "subsection (a)(ii) provides an appropriate starting point in determining the rate of prejudgment interest, but we do not in any sense foreclose the use of subsection (a)(iii) in connection with a rule-based calculation of prejudgment interest, should the equities demand it." 374 N.J.Super. at 511. Moreover, the <u>DialAmerica</u> Court held that subsection (a)(iii) may be appropriate where "unusual circumstances" are present.[2] <u>Id.</u> This approach is generally consistent with the holding in <u>Litton</u> that judges may use R. 4:42-11 as a guide.[3]

Finally, the court must set forth the particular date from which pre-judgment interest is calculated. <u>See</u> <u>R. Jennings Mfg.</u>, 286 N.J.Super. at 415. The same discretion applicable to a court's determination of the appropriate pre-judgment interest rate applies to the court's determination of the date upon which pre-judgment interest will begin to accrue. The accrual date, like the interest rate, should be decided on the basis of equitable

---

[2] Neither the Court rule nor New Jersey law defines the term "unusual circumstances."

[3] Although <u>DialAmerica</u> was decided before <u>Litton</u>, its holding is consistent with that New Jersey Supreme Court case and has been relied upon by the Appellate Division post-<u>Litton</u>, albeit in an unpublished disposition. <u>See</u> <u>Gaber v. Gaber</u>, No. A-3930-09T4; 2012 WL 223597, *7 (N.J. App. Div. Jan 26, 2012).

principles. See County of Essex, 186 N.J. at 61-62.

With these principles in mind, I now turn to the parties' arguments. As an initial matter, the Court notes what is not in dispute. The parties agree that pre-judgment interest should be granted on the full $3,287,597 amount. The parties further agree that the post-judgment interest rate applicable to subsection (a)(ii) awards is set by the annual rate of interest on state accounts, which has varied over the past several years, and that an award based on subsection (a)(iii) would add two percent to the applicable interest rate under subsection (a)(ii). Where they part company is on the accrual date and the what rate—the one under subsection (a)(ii) or the two percent-heightened subsection (a)(iii)—should be applied.[4]

### A.   Accrual Date

Turning first to the parties' accrual date arguments, the accrual date determination is slightly complicated by the fact that the $3,287,597 amount includes billings under multiple agreements that were due on differing dates. Munich contends that each billing was due on the date billed, i.e., "on demand," however, Munich has incorporated into its pre-judgment interest calculation a 30-day grace period for each billing. The first date that Munich contends a portion of the $3,287,597 amount was due was June 20, 2007; according to Munich, $849,620 was due on that date. Applying its self-imposed 30-day grace period, Munich argues that interest begins to accrue on that amount on July 20, 2007. See Frawley

---

[4]   Neither party argues for application of a different rate than those found in the rule.

Decl., Exh. A - B. Munich has attached a detailed spreadsheet calculating interest on that amount and the remaining amounts in similar fashion from mid-2007 onward.

In contrast, Tower argues that the mid-2007 date is inappropriate because "Munich did not provide sufficient information at that time from which [Tower] could determine whether such amounts were, in fact, owing under the [parties'] [a]greements." Dulligan Afft., ¶ 2. It was not until an "accounting reconciliation exercise that took place after . . . discovery" in this matter that Tower contends it "obtained the information it needed to determine the amount it owed under the Retrocessional Agreements." Id. at ¶ 3. For this reason, Tower contends that the appropriate accrual date is the date of the accounting reconciliation—March 18, 2011. Id.

Tower, further, cries foul at Munich's attempt to rely on a mid-2007 date because the predicate for Munich's unopposed motion for partial summary judgment was that the parties agreed on the $3,287,597 amount after engaging in the March 18, 2011 account reconciliation process. See Pl. SOMF at ¶¶ 7 ("For several months in late 2010 and early 2011, the parties engaged in a comprehensive account reconciliation process ...."). Tower intimates that it would have not conceded that Munich was entitled to pre-judgment interest had Munich previously indicated that it believed it was entitled to interest back to mid-2007. Moreover, Tower continues, there is no evidence in the record to support a finding that Munich was entitled to the funds in June 2007.

Generally, "[t]he law imposes a duty to pay interest from the time payment of principal is due ...." Siegelman v. Weinstein, No. A-0738-08T2, 2009 WL 2382248, *5 (N.J.

8

App. Div. Aug 5, 2009) (citing <u>Twp. of Wayne v. Ricmin, Inc.</u>, 124 N.J.Super. 509, 514 (App.Div.), certif. denied, 63 N.J. 583 (1973) <u>quesionted on other grounds by</u> <u>Jersey City v. Realty Transfer Co.</u>, 129 N.J. Super. 570, 576 (App. Div. 1974)). <u>See</u> <u>also</u> <u>County of Essex</u>, 186 N.J. at 61 (affirming trial court's determination that date of each of several bond transactions was appropriate accrual date). Here, however, Munich has not pointed to any documents in the record, such as the specific agreements under which Munich claims it was entitled to payment as early as June 2007, to support its position. While Munich has provided a declaration from one of its employees who calculated the various amounts billed to Tower and when they were billed, that certain amounts were billed does not mean that the amounts were actually due. It is true that the employee states that the agreement provides for payment "on demand" but, without copies of those agreements, the Court cannot make a determination that payment was due as the employee represents. Moreover, I read Munich's moving papers on the motion for summary judgment as relying on the mutual account reconciliation process as the basis for judgment.

That said, Tower's proposed accrual date is likewise untenable. While Tower may have agreed to pay the past due amount as of the date of reconciliation, Tower does not dispute that the monies were several years past due at that time. Rather, Tower argues that it did not believe it had sufficient information to justify payment as early as 2007. Applying the account reconciliation date to the monies due before that date would be contrary to the underlying purpose of the pre-judgment interest rule, which is to compensate the plaintiff for the defendant's use of the monies during a time frame during

9

which the plaintiff was entitled to those funds. See Litton, supra at 390. See also Ellmex Constr. Co., Inc. v. Republic Ins. Co., 202 N.J.Super. 195, 494 A.2d 339 (App.Div.1985), certif. denied, 103 N.J. 453, 511 A.2d 639 (1986) (noting that the equitable purpose of an award of pre-judgment interest is "to indemnify the claimant for the loss of what the moneys due him would presumably have earned if the payment had not been delayed.").

In my view, the best accrual date for the bulk of the monies due is the date of the institution of this action, which is May 28, 2009. I make this determination by referring to subsection (b) of Rule 4:42-11 for guidance. As noted, that subsection designates the rule for pre-judgment interest in tort actions as "from the date of the institution of the action or from a date 6 months after the date the cause of action arises, whichever is later ...." R. 4:42-11(b). Here, treating the date the action was filed as the accrual date best balances the equities between both parties. This result ensures that Munich receives payment for the monies to compensate it for the loss of what the moneys due it would presumably have earned if the payment had not been delayed, while acknowledging that Tower disputed when and whether the amounts were due until Tower's questions were answered during the account reconciliation process.

There is one additional clarification required. As indicated above, the full amount of the judgment included amounts due prior to the date the complaint was filed as well as amounts due after the complaint was filed. According to Munich's pre-judgment interest

spreadsheet, the amount due through April 19, 2009 was $3,188,301.[5] Because this amount was sought prior to the date the complaint was filed, the Court will grant pre-judgment interest on that amount as of May 28, 2009.

Munich's spreadsheet indicates that the remaining amount of the judgment, $99,296, was due sometime between April 19, 2009 and January 1, 2011. It is not clear from the spreadsheet at what specific point in time each of the payments were due. Because there is no basis for applying the May 28, 2009 date to these amounts, and without record support for the contract due dates, the Court is left with the reconciliation date as the best option for a date of accrual for this remaining amount. So, for the remaining $99,296, the Court will apply the March 18, 2011 date as the operative date. Accord Liss v. Federal Ins. Co., 2009 WL 231992 (N.J. App. Div. 2009) (treating settlement date as date of accrual). The Court recognizes that there may be some imprecision in this formula, nonetheless, the Court finds this result the most equitable under the circumstances and in light of the record before the Court at this time. Cf. N.J. Power & Light Co. v. Mabee, 41 N.J. 439, 441, 197 A.2d 194 (1964) ("[T]he sundry rules for measuring damages are subordinate to the ultimate aim of making good the injury done or loss suffered and hence [t]he answer rests in good sense rather than in a mechanical application of a single formula.") (quoting 525 Main Street Corp. v. Eagle Roofing Co., Inc., 34 N.J. 251, 255, 168 A.2d 33 (1961)) (internal citation omitted).

---

[5] While Tower disputes whether payments were due "on demand," Tower does not generally dispute the accuracy of the figures in the spreadsheet.

### B. Interest Rate

I now turn to the parties' argument regarding what rate to apply. Munich relies on Feit v. Great-West Life and Annuity Ins. Co., 460 F.Supp.2d 646, 650 (D.N.J. 2006), for the proposition that subsection (iii) of the post-judgment interest rule—with its two-percent addition—should apply here. I do not find Munich's reliance on Feit persuasive, however, because the parties in that case did not dispute the rate. See id. at 649 ("The parties do not dispute the applicable Cash Management Fund rate and thus the Court adopts Mrs. Feit's calculations utilizing the applicable Cash Management Fund rate plus two percent (2%) per year.") Because the parties did not dispute the rate, the court "had no occasion to address it," DialAmerica, 374 N.J.Super. at 511, which means that Feit's ruling offers little guidance to me as to which part of subsection (a) should be my starting point.

Fortunately, Litton and DialAmerica provide useful guidance here. Read together, these cases suggest that the "appropriate starting point in determining the rate of prejudgment interest" is "subsection (a)(ii)." DialAmerica, 374 N.J.Super. at 511. See Litton, 200 N.J. at 391 (affirming trial court's reliance on subsection (a)(ii)). Unusual circumstances or the equities of the matter, however, may justify the addition of the two percent set forth in subsection (a)(iii). DialAmerica, 374 N.J.Super. at 507.

I find that the equities warrant application of the Cash Management Fund rate without the benefit of the additional 2% authorized by subsection (a)(iii). While the size of the judgment in this case is significant, DialAmerica suggests that the higher rate of subsection (a)(iii) should not be imposed on large contract awards as a matter course. 374

N.J.Super. at 509. Moreover, other than relying on Feit, Munich has not pointed to any principled basis for applying the enhanced rate here; Munich has not suggested why this case is the unusual case in which the enhanced rate should apply. Lastly, in my view, to apply the enhanced rate in this case would create a windfall for Munich. Under that rate, Munich would be entitled to $428,826.56 in pre-judgment interest. Despite the large size of the past due amount, the fact remains that once the parties amicably resolved their dispute through the account reconciliation process Tower paid the amount due in full prior to a judgment being entered by the Court. Accordingly, balancing the equities in this matter, I conclude that the rate of return earned by the State Treasurer contemplated by R. 4:42-11(a)(ii), i.e., the Cash Management Fund rate, applies.

### C. Calculation

Based on the foregoing, I compute the pre-judgment interest as follows. Munich is entitled to interest on the $3,188,301 amount from May 28, 2009 until the date of payment, which was July 15, 2011.[6] The shortened time period in 2011 equals 195 days, not including the date of payment. The applicable interest rate was 4% during 2009, 1% during 2010, and 0.5% during 2011.

Calculating the amount of interest with these rates, Munich is entitled to $127,532.04 for 2009, $31,883.01 for 2010, and $8,516.69 for the 195 days in 2011. This totals $167,931.74. For the remaining $99,296, Munich is entitled to pre-judgment interest for the time frame

---

[6] To be sure, R. 4:42-11 provides for simple interest and Munich has not argued that compound interest should be granted here.

from March 18, 2011 through July 15, 2011, a time period equaling 119 days. A simple interest calculation on the $99,296 for that duration yields $161.87 in interest. Adding all interest calculations together, Plaintiff is entitled to $168,093.61 in pre-judgment interest.

## III.   CONCLUSION

For the reasons set forth above, I conclude that Plaintiff is entitled to $168,093.61 in pre-judgment interest.


Dated: March 26, 2012                                           /s/Freda L. Wolfson
                                                                Freda L. Wolfson, U.S.D.J.